

Todd M. Friedman, Esq.- State Bar #216752
Meghan E. George, Esq.- State Bar #274525
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills CA 91367
Phone: (877) 206-4741
Fax: (866) 633-0228
Email: tfriedman@toddflaw.com
        mgeorge@toddflaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LORI COHEN, DANIEL COHEN**, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>**PORSCHE CARS NORTH AMERICA, INC.,**<br><br>　　　　　Defendant. | **Case No.:**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**(Amount to Exceed $25,000)** |

## COMPLAINT

NOW COMES the Plaintiffs LORI COHEN and DANIEL COHEN, by and through Plaintiff's attorney, LAW OFFICES OF TODD M. FRIEDMAN, P.C., and for Plaintiff's Complaint against, PORSCHE CARS NORTH AMERICA, INC., alleges and affirmatively states as follows:

## PARTIES

1. Plaintiffs LORI COHEN and DANIEL COHEN("Plaintiff"), are individuals who purchased subject vehicle in the State of California.

2.      Manufacturer, PORSCHE CARS NORTH AMERICA, INC. ("Manufacturer"), is a limited liability company, authorized to do business in the State of California and is engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Manufacturer is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships.  Manufacturer does business in all counties of the State of California.

## JURISDICTION AND VENUE

3.      Defendant sold, advertised, and marketed its products within the State of California. Therefore, this Court has personal jurisdiction over Defendant.

4.      This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the matter in controversy in this matter exceeds the sum or value of $5,000,000 as to all putative Class members, exclusive of attorneys' fees and costs. 28 U.S.C. Sections 1332(d), 1453, and 1711-1715.

5.      This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that Plaintiff is a resident and citizen of the State of California while Defendant is a corporation incorporated under the laws of the State of Delaware.

6.      This Court has personal jurisdiction over Defendant because Defendant conducts business in the County of Los Angeles, State of California. Therefore, Defendant has sufficient minimum contacts with this state, and otherwise purposely avails itself of the markets in this state through the promotion, sale, and marketing of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Los Angeles, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) many of the acts and transactions giving rise to this action occurred in this district.

## BACKGROUND

8.     Plaintiffs LORI COHEN and DANIEL COHEN bring this action individually for themselves and on behalf of all persons who purchased or leased in California certain vehicles equipped with uniform and uniformly defective wireless key system that was vulnerable to attach which was designed, manufactured, distributed, warranted, marketed, and sold or leased by PORSCHE CARS NORTH AMERICA, INC. ("Porsche") ("Manufacturer"), as described below.

9.     On or about May 31, 2017, Plaintiff entered a lease agreement for a new 2017 Porsche 911 Carrera ("ML350"), manufactured by Manufacturer, Vehicle Identification No. WP0AA2A98HS108277.

10.    The vehicles at issue in this action include all Porsche vehicles manufactured within the statutory time period, that use the same wireless key technology (the "Class Vehicles").

11.    This action is brought to remedy violations of law in connection with Porsche's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' wireless entry system all have a serious design defect which make the key vulnerable to hacking, and thus make the Class Vehicles vulnerable to theft.

12.     On information and belief, the wireless key fob/entry system is manufactured in substantially the same manner in all Class Vehicles, and does not vary from vehicle to vehicle in its construction, operation, or control.

13.     Plaintiff believes that the defective and flawed wireless entry system is the cause of his vehicle being stolen, and of being broken into.

14.     In consideration for the purchase of the Class Vehicles, Manufacturer issued and supplied to Plaintiff and the Class Members several written warranties, as well as other standard warranties fully outlined in the Manufacturer's Warranty Booklet.

15.     On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the wireless key entry system defects through internal sources, testing, and consumer complaints, including when Class Members brought the Class Vehicle to Porsche for inspection.

16.     Regularly, prominent news outlets such as CNN, USA Today, and other new journalists publicly wrote about the defects relating to the wireless key entry system, and how the defect made the Class Vehicles vulnerable to hacking, theft, and break ins. Owners of the Class Vehicles have very publicly complained about this issue directly to Porsche.

17.     Yet despite this knowledge, Porsche failed to disclose and actively concealed the defective wireless entry system from Class Members and the public, and thus caused Plaintiff and the Class Members to be vulnerable to theft of their high priced vehicles.

18.     As a result of the defective wireless entry system, Plaintiff's vehicle was broken into, and his personal items were stolen.

19.    When Plaintiff called Porsche to complain about this issue, the Defendant disingenuously tried to place blame on the Plaintiff, and other class members, and suggested wrapping the wireless key fob in tin foil, or putting it in the microwave, to prevent the problems from occurring again.

20.    The Defendant was well aware of the problems relating to the defective wireless key entry system at the time that Plaintiff reported the issue. Yet, the Defendants did not even offer to replace Plaintiffs' key fob, repair the system, or reimburse them for damages.

21.    The defects listed below violate the express written warranties issued to Plaintiff by manufacturer, as well as the implied warranty of merchantability.

22.    Plaintiff brought the vehicle to seller and/or other authorized service dealers of manufacturer to attempt repair on the above referenced defects, but Defendant's representatives failed to remedy the underlying problem of the defective wireless key fob.

23.    Plaintiff, and Class Members, are being made to incur increased costs and damages relating to theft as a result of the defective wireless key entry system, and Defendant is refusing to remedy the defects with the wireless key fob, or even replace them.

24.    Plaintiff, and class members, provided Manufacturer through Seller and/or other authorized dealers of Manufacturer sufficient opportunities to repair the vehicle.

25.    As a result of Porsche's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the defective wireless key entry system, and Porsche has not provided a permanent remedy for this Defect. Furthermore, Plaintiff

and the Class Members justifiably lost confidence in the Class Vehicles' reliability and said defects have substantially impaired the value of the Class Vehicles to Plaintiff and the putative class.

## PLAINTIFF'S ALLEGATIONS

26.    As stated herein, Plaintiff entered a lease agreement for a new 911 Carrera Coupe on May 31, 2017. The VIN number is WP0AA2A98HS108277.

27.    Plaintiffs purchased this vehicle for personal and family use.

28.    Plaintiffs first brought his vehicle into the dealership for the issue with the wireless key entry system on or about January 2018, after the Plaintiffs' vehicle was broken into as a result of thieves hacking into the wireless key entry system while the Plaintiffs were at home.

29.    As stated herein, when Plaintiff complained of the defects with the wireless key entry system, Plaintiff was told at that time that Defendant was well aware of the issue, and that Plaintiff should keep his key in the microwave, or wrap it in aluminum foil, to prevent the issue from happening again. Defendant refused to attempt to repair the key, attempt to repair the wireless key entry system, or to compensate Plaintiffs for their damages.

30.    To date, Plaintiffs' wireless key entry system has not been repaired by the Defendant, who is refusing to repair this known issue despite widespread knowledge of the fact, thus leaving the Plaintiffs and the Class Members vulnerable to theft, even at their own homes.

## CLASS ALLEGATIONS

31.    Plaintiffs bring this action for themselves and on behalf of the Class Members. Plaintiff is informed and believe that, because of the defective wireless key fob, the comfort and enjoyment of Class Vehicle owners is disrupted, as the

vehicles are regularly and constantly vulnerable to theft, including Class Members, and requiring Class Members to pay for repeated nonpermanent "solutions" and damages that do not prevent the recurrence of the problem.

32.    Plaintiff brings this lawsuit as a class action on behalf of themselves and all other similarly situated individuals pursuant to California Code of Civil Procedure ("CCP") section 382.

33.    Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the proposed class (the "Class"), defined as follows:

**All residents of California who purchased or leased a Class Vehicle with the wireless key fob. A "Class Vehicle" is defined as any Vehicle of any Porsche model, which utilizes a wireless key fob, including the 718 Boxer, 718 Cayman, 2017 911 Carrera, 2018 911 Carrera, 2019 911 Carrera, 911 GT2 RS, 911 GT3/GT3 RS, 911 Turbo/Turbo S, Cayenne, Cayenne Coup, Cayenne Turbo/Turbo S, Macan, 2018 Porsche Panorama,**

Excluded from the Class are: (1) Porsche, any entity or division in which Porsche has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

34.    Based on a simple Google search, the smell that Plaintiffs and the Class Members are being regularly subjected to as a result of their defective wireless key

fobs is increased opportunity for theft, and increased damages associated with that vulnerability.

35.    As various complaints of this issue are present online, and in various news outlets, multiple consumers have complained across the country, it is clear that Porsche knew or should have known that the defects that were present with the wireless key entry system, which could and did result in theft of Class Vehicles, or theft of items within the class vehicles after break-ins. Yet, incredibly, Porsche continues to deny the existence of this issue, continues to refuse to fix this issue or repair the wireless key entry system, so that they can continue to charge premium prices for their vehicles thus presenting a continued risk to the CLASS MEMBERS safety.

36.    On information and belief, prior to the manufacture and sale of the Class Vehicles, Porsche knew of the wireless key entry system through, or as evidenced by, sources such as pre-release design and testing information; technical service bulletins; consumer complaints made directly to Porsche and/or posted on public online forums, or news journalism websites/channels; testing done, including testing in response to consumer complaints.

37.    As used herein, the term "Class Members" shall mean and refer to the members of the Classes described above.

38.    Plaintiffs reserve the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

39.    Upon information and belief, the proposed class is composed of thousands of persons.  The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

40.    No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

41.    Rather, all claims in this matter arise from the identical, false, affirmative representations of the services, when in fact, such representations were false.

42.    There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

a.    Whether Defendant engaged in unlawful, unfair, or deceptive business practices in selling Class Products to Plaintiff and other Class Members;

b.    Whether Defendants made misrepresentations with respect to the Class Products sold to consumers;

c.    Whether Defendants unfairly profited and benefited from the sale of vehicles with wireless key entry system;

d.    Whether Defendants violated California Bus. & Prof. Code § 17200, et seq. and California Bus. & Prof. Code § 17500, et seq.;

e.    Whether Defendants breached the warranty provided to Class Members;

f.    Whether Defendant breached the implied warranty provided to Class Members;

g.    Whether Plaintiffs and Class Members are entitled to equitable and/or injunctive relief;

h.    Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class Members; and

   i. The method of calculation and extent of damages for Plaintiffs and Class Members.

43. The claims of the Plaintiffs are not only typical of all class members, they are identical.

44. All claims of Plaintiffs and the class are based on the exact same legal theories. Plaintiffs have no interest antagonistic to, or in conflict with, the class. Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiffs bought Class Products from Defendants during the Class Period.

45. Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs' claims are typical of all Class Members as demonstrated herein.

46. Plaintiffs will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class. Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I
## BREACH OF WRITTEN WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
## MANUFACTURER

47. Plaintiffs reallege and incorporates by reference as fully set forth herein, all paragraphs of this Complaint.

48. Plaintiffs are purchasers of a consumer product who received the 911 Carrera during the duration of a written warranty period applicable to the 911 Carrera

and who is entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said warranty.

49.    Manufacturer is a person engaged in the business of making a consumer product directly available to Plaintiff.

50.    Seller is an authorized dealership/agent of Manufacturer designed to perform repairs on vehicles under Manufacturer's automobile warranties.

51.    The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. ("Warranty Act") is applicable to Plaintiffs' Complaint in that the 911 Carrera was manufactured, sold and purchased after July 4, 1975, and costs in excess of ten dollars ($10.00).

52.    Plaintiffs and all Class Members' purchase of the Porsche 911 Carrera, and all Class Vehicles, were accompanied by written factory warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Class Vehicles, to repair the Class Vehicles, or take other remedial action free of charge to Plaintiffs and the Class Members with respect to the Class Vehicles in the event that the Class Vehicles failed to meet the specifications set forth in said undertaking.

53.    Said warranties were the basis of the bargain of the contract between the Plaintiffs and Class Members and Manufacturer for the sale of the   Class Vehicles to Plaintiffs and the Class Members.

54.     Said purchase of the Class Vehicles was induced by, and Plaintiffs and the Class Members relied upon, these written warranties.

55.     Plaintiffs and the Class Members have met all of their obligations and preconditions as provided in the written warranties.

56.     As a direct and proximate result of Manufacturer's failure to comply with its express written warranties, Plaintiffs and the Class Members have suffered damages and, in compliance with 15 U.S.C. §2310(d), Plaintiffs are entitled to bring suit for such damages and other equitable relief.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT**
**MANUFACTURER**

57.      Plaintiffs reallege and incorporates by reference as through fully set forth herein, all paragraphs of this complaint.

58.     The Class Vehicles purchased by Plaintiffs and the Class Members were subject to an implied warranty of merchantability as defined in 15 U.S.C. §2301(7) running from the Manufacturer to the intended consumer, Plaintiffs and the Class Members herein.

59.     Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiffs and the Class Members.

60.    Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Manufacturer has entered into a contract in writing within ninety (90) days of purchase to perform services relating to the maintenance or repair of a motor vehicle.

61.    Pursuant to 15 U.S.C. §2308, the Class Vehicles were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Class Vehicles were intended.

62.    The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

63.    The above described defects in the Class Vehicles render the Class Vehicles unfit for the ordinary and essential purpose for which the Class Vehicles were intended.

64.    As a result of the breaches of implied warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

## COUNT III
## SONG –BEVERLY CONSUMER WARRANTY ACT

65.    Plaintiff incorporates by reference each allegation set forth above.

66.    The Class Vehicles purchased by Plaintiffs and Class Members were subject to an implied warranty of merchantability as defined in Cal. Civ. Code §1790

running from the Manufacturer to the intended consumer, Plaintiff and the Class Members herein.

67.    Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiffs.

68.    Manufacturer is prohibited from disclaiming or modifying any implied warranty under Cal. Civ. Code §1790.

69.    Pursuant to Cal. Civ. Code §1790, the Class Vehicles were impliedly warranted to be fit for the ordinary use for which the Class Vehicles were intended.

70.    The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

71.    The above described defects in the Class Vehicles caused it to fail to possess even the most basic degree of fitness for ordinary use.

72.    As a result of the breaches of implied warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

### COUNT IV
### CALIFORNIA FALSE ADVERTISING ACT
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

73.    Plaintiffs incorporate by reference each allegation set forth above.

74.     California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

75.     Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Class Vehicles to Plaintiffs and Class Members, and made false representations to Plaintiffs and other putative class members in order to continue to profit from the premium price of these vehicles, without remedying the true problem with the wireless key entry system.

76.     Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class Members.

77.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property, time, and attention.  Plaintiffs reasonably relied upon Defendant's representations regarding the Class Products. In reasonable reliance on Defendant's false representations that the vehicle had a functioning (and safe) wireless key entry system, Plaintiffs and other Class Members purchased the class vehicles at a premium price. Thereafter, when faced with the defects of the wireless key entry system, Defendant refused to repair or remedy the issues.  In turn Plaintiffs

and other Class Members are being forced to incur damages related to a much bigger and critical defect, the faulty wireless key entry system. Therefore Plaintiffs and other Class Members have suffered injury in fact.

78.    Plaintiffs allege that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

79.    Defendant advertised to Plaintiffs and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products would be of a particular quality.

80.    Thus, Defendant knowingly sold Class Products to Plaintiffs and other putative class members.

81.    The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease its false advertising, as well as disgorgement and restitution to Plaintiffs and all Class

Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## COUNT V
## VIOLATION OF UNFAIR BUSINESS PRACTICES ACT
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

82.    Plaintiffs incorporate by reference each allegation set forth above.

83.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.   Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

84.    California Business & Professions Code § 17200 prohibits any "unfair business act or practice."   Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as

the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

85. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

86. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiffs and members of the Class have suffered injury in fact due to Defendant's decision to knowingly sell defective Class Vehicles, with a defective wireless key entry system that is vulnerable to attack and theft. Thus, Defendant's conduct has caused substantial injury to Plaintiffs and the members of the Sub-Class.

87. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiffs and members of the Class that the Class Products were of a certain luxury value and price, in order to induce them to spend money on said Class Products. In fact, knowing that Class Products were not of a

suitable quality to be sold, due to the defective wireless key entry system, Defendant unfairly profited from their sale.  Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

88.    Finally, the injury suffered by Plaintiffs and members of the Sub-Class is not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the quality of the Class Products, Plaintiffs and class members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products were in a permanently defective condition, due to the defects with the wireless key entry system. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and the Class members to purchase these premium luxury vehicles.  Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury which these consumers could reasonably have avoided.

89.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

90.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent"

prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

91.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

92.    Here, not only were Plaintiffs and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiffs agreed to purchase Class Products under the basic assumption that they were of a suitable quality and merchantable condition, when in fact they were not suitable to be sold, and were being sold with an inherent defect in the wireless key entry system.  Plaintiffs' reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

93.    As explained above, Defendant deceived Plaintiffs and other Class Members by representing the Class Products as being in a merchantable condition, and thus falsely represented the Class Products.

94.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

95.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

96.    As explained above, Defendant deceived Plaintiffs and other Class Members by representing the Class Products as having an operating keyless entry system, when in fact the system was highly defective and dangerous, which unfairly deceived Plaintiffs and other Class members by representing that the vehicles were of a certain quality and standard, when they knew that they were not.

97.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiffs and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

98.    These representations by Defendant is therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq.*

99.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to

Business and Professions Code section 17203, Plaintiffs and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**PRAYER FOR RELIEF**

WHEREFORE, PlaintiffS and all Class members pray that this Court issue:

- An order certifying this action as a class action and appointing Plaintiff as Class Representatives and their counsel as Class Counsel;
- An order requiring Defendants to pay Plaintiff and Class members an amount of actual, direct, incidental and consequential damages in an amount to be determined at trial;
- An order awarding restitution as to all causes of action where restitution is available;
- An order awarding revocation as to all causes of action where revocation is available;
- An order granting preliminary and permanent injunctive relief requiring Defendants to recall and replace or repair the defective Class Vehicles, and prevent any further deceptive conduct or advertising with respect to the Class Vehicles and the keyless entry systems;
- An order awarding pre- and post-judgment interest;
- An award of reasonable attorney's fees and costs of suit as permitted by law; and
- For such other and further relief this Court may deem just and proper.

**PLAINTIFFS HEREBY REQUEST A JURY TRIAL IN THIS MATTER.**

Date: June 24, 2019          LAW OFFICES OF TODD M. FRIEDMAN, P.C.


                             By:_____/s Todd M. Friedman
                                 TODD M. FRIEDMAN, ESQ.
                                 Attorneys for Plaintiff